Filed 8/18/25  In re N.L. CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re N.L., a Person Coming Under the Juvenile Court Law. | |
| HUMBOLDT COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>Ryan L.,<br><br>  Defendant and Appellant. | A172960<br><br>(Humboldt County<br>Super. Ct. No. JV2300054) |

The presumed father of N.L., Ryan L. (father), appeals from the juvenile court's findings and orders made pursuant to Welfare and Institutions Code section 366.26[1] at a permanent planning hearing.  The court ordered N.L. placed under the legal guardianship of her maternal great-grandmother.  Father seeks a conditional reversal and remand to the juvenile court based on a single claim:  that although the juvenile court found N.L. to be an Indian child under the federal Indian Child Welfare Act (ICWA)

---

[1] Our undesignated statutory references are to the Welfare and Institutions Code.

1

based on her mother's (mother) membership in the Round Valley Indian Tribes (RVIT), it and respondent, the Humboldt County Department of Health and Human Services (Department), violated ICWA and related California law by not ensuring sufficient inquiries were made to other Native American tribes based on father's possible Native American ancestry. We agree and shall order a conditional reversal and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

We provide only a brief overview of the events and proceedings that occurred below in light of the limited nature of this appeal.

Soon after N.L.'s birth in March 2023, the juvenile court, upon application from the Department and RVIT, removed her from her parents' custody. At the detention hearing, the court found reason to know N.L. was an Indian child based on her mother's history. Father's counsel (the parents were not present) represented that the paternal grandmother said there was no reason to believe father had any Native American ancestry. The court subsequently placed N.L. with her maternal great-grandmother, who already was caring for another of mother's children, a boy who was N.L.'s half-sibling.

The Department filed a section 300 petition alleging N.L. faced a substantial risk of serious physical harm or illness as a result of her parents' failure to supervise or protect her adequately, neglect, and inability to provide regular care for her based on their drug use, including because N.L. suffered drug withdrawal symptoms upon her birth. The court sustained the petition.

At the disposition hearing, the court found by clear and convincing evidence that if N.L. were returned home, there was a substantial danger to her physical health, safety, protection, or physical or emotional well-being

2

and removed her from her parents' physical custody. It ordered that she continue to be placed with the maternal great-grandmother. The parents were granted reunification services.

N.L.'s placement was repeatedly debated, including between the parents, the grandparents on both sides, the Department, and the RVIT. The juvenile court placed N.L. with her maternal great-grandmother throughout the case and ultimately ordered as a permanent plan that the maternal great-grandmother be N.L.'s legal guardian. The Department and RVIT favored this placement and order. At different times in the case, the parents and the paternal grandparents sought to have N.L. placed with the paternal grandparents, including when the parents indicated their willingness to relinquish their parental rights in order to have N.L. adopted by the paternal grandparents.

Most relevant to this appeal, on April 17, 2024, shortly before a hearing on a contested six-month review and other matters, father filed a parental notification of Indian status (an ICWA-020 form) in which he indicated he might be eligible for enrollment with the "Cherokee and/or Apache and/or Nez Perce" tribes.[2] At the hearing, paternal great-grandfather informed the court that when he was a child, he, his oldest brother, and his father lived in Colorado. His brother told him that their father and his brother ran away from an Apache reservation in Farmington, New Mexico when they were 12 years old. At the hearing, the paternal great-grandfather added that he thought his wife had Nez Perce ancestry.

The Department's counsel acknowledged that the paternal great-grandfather's statements triggered the Department's ICWA inquiry

---

[2] With father's counsel's permission, the court added the Nez Perce at the six-month review hearing that occurred that same day.

obligations, and the court agreed. He said the Department wanted to be sure to investigate thoroughly and inquire about N.L.'s eligibility with any tribe for which she might have ancestry. He asked all of the relatives present (which included several on N.L.'s paternal side) and those with whom they had contact to provide all relevant information to the Department. Counsel for the RVIT asserted that under section 224.1, subdivision (e)(1), a child who might be eligible for membership or citizenship in more than one tribe was to have designated as her tribe the one "in which the Indian child has the most significant contacts," and opined that tribe was RVIT.

The juvenile court continued the hearing until the next week. At that hearing, father's counsel requested that the court specifically direct the Department to follow up with the tribes father had identified. The Department's counsel stated that the Department was "abundantly familiar with Indian Child Welfare Act inquiry and notice procedures and we will follow the law as required. . . . The information we have right now I do not believe arises to the level of anything further than reason to believe. And that's questionable in my opinion, but we are going to do the investigations. [¶] I saw an e-mail this morning containing a number of relatives and potential tribes, so we are going to look into it, follow up with those people, notice as necessary, contact the DIA if necessary if required by the code. But if it's not necessary and not required, we won't." The court said, "Well, I'll do what I always do, is follow the law. If the law says with new information that you need to, which I believe that it does, contact those tribes then follow the law. . . . [¶] . . . So follow the law everybody."

The next month, on May 10, 2024, the RVIT, through counsel, filed a brief in opposition to the parents' stated intention to voluntarily relinquish N.L. for adoption by the paternal grandparents. Among other things, the

4

RVIT noted that father had raised the possibility that he had tribal connections, that the information father provided raised a "reason to believe" N.L. had other tribal ancestry that called for N.L.'s "tribal connections continuing to be investigated and notice provided as required under the law," and reiterated its belief that ultimately RVIT would be determined to be N.L.'s tribe.  The Department's counsel and minor's counsel joined in the RVIT's brief.

At a May 22, 2024 hearing, the court, in addressing the parents' intention to relinquish their parental rights, ruled that ICWA applied to N.L.'s case "and that there cannot be any relinquishment that would be done absent compliance with the Act.  So it can't be done privately . . . ."

The parties do not identify any other Department efforts to contact the tribes that father identified.  Nor do they indicate that the court engaged in any further discussions or actions regarding the matter.

On September 16, 2024, the court terminated mother's and father's reunification services at a contested combined six,- 12-, and 18-month review hearing.  The court set a section 366.26 hearing.

The Department reported in its section 366.26 hearing that ICWA applied, and that N.L. was eligible for enrollment in the RVIT through her mother, who was an enrolled member of the RVIT.  It added, "The Department has collaborated with the [RVIT] throughout the life of this case."  It repeated these contentions in a home evaluation for guardianship report it later submitted to the court as part of an addendum.  It made no mention of whether or not father had or had reported any Native American ancestry, or whether the Department had made any related inquiries to tribes, in either report.

In another addendum, the Department attached an adoption assessment report by the California Department of Social Services. That report stated that mother was an enrolled member of RVIT, that N.L. was eligible for enrollment in RVIT, and that "[t]he birth father reports no Native American ancestry."

The Department, in collaboration with RVIT, recommended as a permanent plan that maternal great-grandmother be appointed N.L.'s legal guardian. At the section 366.26 hearing on February 10, 2025, father submitted to this legal guardianship. At the hearing, the court found as a compelling reason why the termination of parental rights would not be in N.L.'s best interest was that it would substantially interfere with her connection to the tribal community, meaning RVIT, and her membership rights. The court ordered N.L.'s permanent plan to be a legal guardianship with maternal great-grandmother. It indicated its jurisdiction over the case would be terminated.

Father filed a timely notice of appeal from the court's section 366.26 findings and orders.

## II. DISCUSSION

The parties do not disagree on the duties of inquiry generally required under ICWA and related state law and that father's disclosures to the juvenile court about his possible Native American ancestry created a "reason to believe" such an ancestry existed. Our Supreme Court recently summarized the duty of inquiry triggered by such a "reason to believe":

"Agencies and juvenile courts have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child. (§ 224.2, subd. (a).) . . . [¶] Section 224.2, subdivision (b) specifies that once a child is placed

6

into the temporary custody of a county welfare department, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' (See also [Cal. Rules of Court,] rule 5.481(a)(1).) . . . [¶] . . . [T]he duty 'continues throughout the dependency proceedings.' [Citations.]

"When the agency has 'reason to believe' that an Indian child is involved, further inquiry regarding the possible Indian status of the child is required. (§ 224.2, subd. (e); see also [Cal. Rules of Court,] rule 5.481(a)(4).) The required further inquiry includes (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs (BIA) and State Department of Social Services; and (3) contacting tribes the child may be affiliated with and anyone else that might have information regarding the child's membership or eligibility in a tribe. (§ 224.2, subd. (e)(2)(A)–(C).) At this stage, contact with a tribe 'shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of [ICWA] notices,' and 'sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case.' (*Id*., subd. (e)(2)(C).)

"The sharing of information with tribes at this inquiry stage is distinct from formal ICWA notice, which requires a 'reason to know'—rather than a 'reason to believe'—that the child is an Indian child." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1131–1133, fns. omitted.)

Where the parties disagree is whether there was a "reason to believe" duty of further inquiry in this case in light of the juvenile court's

7

determination that ICWA applied and N.L. was an Indian child based on mother's membership in RVIT.  Father, relying on the "reason to believe" duty of inquiry and a 2015 ICWA publication in the Federal Register regarding the duty of inquiry when a child may be eligible for membership in multiple tribes, 80 Fed.Reg. 10146, 10153 (February 25, 2015),[3] contends that regardless of the court's ICWA determinations, the duty of inquiry applied to the tribes he belatedly identified to the court in the midst of proceedings, after first denying that he had any Native American ancestry.[4]  The Department contends its inquiry was adequate because it led to the identification of a tribe—RVIT— to which N.L. was eligible for membership and a determination that ICWA applied to the case.  Moreover, the Department argues, even if its inquiry was inadequate, it was not prejudicial because father is not able to identify any finding or order by the court that was in error, since the court concluded that ICWA *did* apply on the basis of N.L.'s connection to RVIT.

Father is correct.  Although not discussed by the parties, the Federal Register citation he relies on was followed by the BIA's adoption of section 23.109 of title 25 the Code of Federal Regulations regarding ICWA.  It provides in relevant part:

"(c)  If an Indian child meets the definition of 'Indian child' through more than one Tribe because the child . . . is eligible for membership in more

[3] Father did not request that we take judicial notice of this publication, but such a request is unnecessary for published material.  (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 45–46, fn. 9.)

[4] Father submitted to the juvenile court's legal guardianship order at the section 366.26 hearing without making an ICWA objection on the grounds he raises on appeal (he raised a different objection about his and mother's ICWA rights not relevant here).  That does not bar him from making an ICWA challenge on appeal.  (*In re Isiah W.* (2016) 1 Cal.5th 1, 9.)

than one Tribe, the court must provide the opportunity in any involuntary child-custody proceeding for the Tribes to determine which should be designated as the Indian child's Tribe.

"(1)  If the Tribes are able to reach an agreement, the agreed-upon Tribe should be designated as the Indian child's Tribe.

"(2)  If the Tribes are unable to reach an agreement, the State court designates, for the purposes of ICWA, the Indian Tribe with which the Indian child has the more significant contacts as the Indian child's Tribe, taking into consideration:

"(i)  Preference of the parents for membership of the child;

"(ii)  Length of past domicile or residence on or near the reservation of each Tribe;

"(iii)  Tribal membership of the child's custodial parent or Indian custodian; and

"(iv)  Interest asserted by each Tribe in the child-custody proceeding;

"(v)  Whether there has been a previous adjudication with respect to the child by a court of one of the Tribes; and

"(vi)  Self-identification by the child, if the child is of sufficient age and capacity to meaningfully self-identify."

These same criteria, with minor, non-substantive revisions, have been incorporated into section 224.1, subdivision (e).[5]

---

[5] Section 224.1, subdivision (e) provides in relevant part:

"(3)  If an Indian child meets the definition of 'Indian child' through more than one tribe because the child is . . . eligible for membership or citizenship in more than one tribe, the court shall provide the tribes the opportunity to determine which tribe shall be designated as the Indian child's tribe.

These ICWA and Welfare and Institutions Code provisions indicate that whether or not the juvenile court finds that a child is subject to ICWA because of her eligibility for membership in a particular tribe, there nonetheless remains a duty to inquire as to *all* tribes for which there is reason to believe the child could be eligible for membership. Both the purposes of ICWA notice provisions and case law are consistent with this conclusion.

Among other things, "ICWA notice ensures that an Indian tribe is aware of its right to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding involving an Indian child. [Citations.] . . . In enacting these provisions, 'Congress was concerned not solely about the interests of Indian children and families, but also about *the impact on the tribes themselves* of the large numbers of Indian children adopted by non-Indians.' ([*Mississippi Choctaw Indian Band v.*] *Holyfield* [(1989)] 490 U.S. [30,] 49; see *id.* at p. 52 [ICWA ' "recognizes that the tribe has an interest in

---

"(4) If the tribes are able to reach an agreement, the agreed-upon tribe shall be designated as the Indian child's tribe.

"(5) If the tribes are unable to reach an agreement, the court shall designate as the Indian child's tribe, the tribe with which the Indian child has the more significant contacts, taking into consideration all of the following:

"(A)  Preference of the parents for membership or citizenship of the child.

"(B)  Length of past domicile or residence on or near the reservation of each tribe.

"(C)  Tribal membership or citizenship of the child's custodial parent or Indian custodian.

"(D)  Interest asserted by each tribe in the child custody proceeding.

"(E)  Whether there has been a previous adjudication with respect to the child by a court of one of the tribes.

"(F)  Self-identification by the child, if the child is of sufficient age and capacity to meaningfully self-identify."

the child which is distinct from but on a parity with the interest of the parents" ']).)" (*In re Isaiah W.*, *supra*, 1 Cal.5th at pp. 8–9, italics added.)

In other words, "[n]otice is a 'key component of the congressional goal to protect and preserve Indian tribes and Indian families.' " (*In re S.B.* (2008) 164 Cal.App.4th 289, 302.) Accordingly, "[n]otice requirements are strictly construed. [Citation.] The Agency must provide notice *to all tribes* of which the child may be a member or eligible for membership. ([former] § 224.2, subd. (a)(3); [*In re*] *Louis S.* [(2004)] 117 Cal.App.4th [622,] 632–633.) Notice to the tribe provides it the opportunity to assert its rights." (*Ibid.*, italics added.)

Thus, in *In re S.B.*, *supra*, 164 Cal.App.4th 289, the relevant agency learned in the course of the dependency proceedings that father's maternal grandfather was Mescalero Apache and notice was sent to that tribe (among others not relevant here), which responded that S.B. was not eligible for enrollment. (*Id.* at p. 294.) On appeal, father argued the juvenile court erred when it determined ICWA did not apply, in part because the agency should have sent notice to *all* Apache tribes. (*Id.* at p. 301.)

The appellate court agreed because "the record contains no information that would allow us to conclude" that S.B. was not a member or eligible for membership in any other Apache tribe. (*In re S.B.*, *supra*, 164 Cal.App.4th at p. 303.) It instructed, "The Agency should contact the BIA for assistance in determining whether in view of the family's heritage S.B. may be a member of or eligible for membership in any tribe other than the Mescalero Apache. . . . We do not suggest the Agency must conduct extensive research; a telephone conversation with a person at the BIA who is familiar with the Apache tribes should be sufficient." (*Ibid.*; see also *In re Louis S.*, *supra*, 117 Cal.App.4th at pp. 632–633 [holding the social worker should have

11

determined whether members of the Chiricahua tribe, which was not a federally recognized Apache tribe, might be members of or eligible for membership in any federally recognized Apache tribe and provided notice to the tribe or tribes and/or the BIA].)

Here, father, including with the help of his paternal great-grandfather, provided reason to believe N.L., regardless of her eligibility for membership in RVIT through her mother, could be eligible for membership or enrollment in the Cherokee, Apache, and Nez Perce tribes through her father. This triggered a "reason to believe" duty of inquiry, which should have proceeded, as paternal relatives, including the paternal great-grandparents, were readily available, as indicated by their repeated appearances at hearings. The record does not show that the Department took any actions to fulfill this duty; the record contains only a vague representation by its counsel about viewing an e-mail on the subject that tells us nothing. The juvenile court must ensure this duty is fulfilled before disposing of this case. We shall conditionally reverse and remand consistent with *In re Dezi C.*, *supra*, 16 Cal.5th at p. 1136 ("error resulting in an inadequate initial Cal-ICWA inquiry requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with [Cal. Rules of Court,] rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3").

### III. DISPOSITION

The juvenile court's findings and orders appealed from are conditionally reversed and the matter is remanded to the juvenile court with directions to comply with the inquiry and notice provisions of ICWA, sections 224.2 and 224.3, and California Rules of Court, rule 5.481(a)(5), consistent with this opinion. If, after receiving notice as required by that law, the

12

relevant tribes do not respond or respond that N.L. is not eligible for membership or enrollment in the tribes, the findings and orders shall immediately be reinstated and further proceedings shall be conducted as appropriate.  If any tribe determines that N.L. is so eligible, the juvenile court shall proceed accordingly.

STREETER, Acting P. J.

WE CONCUR:

GOLDMAN, J.
CLAY, J.*

---

    \* Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.